# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1643

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Derick Catrell Robinson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 13, 2001
Filed: June 7, 2001

_____

Before RICHARD S. ARNOLD, LAY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Derick Robinson was charged in a one-count indictment with possession with intent to distribute 86.9 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (1994). After a two-day trial, a jury found him guilty of the offense. The district court[1] sentenced Robinson to the 120-month mandatory minimum prison term under 21 U.S.C. § 841(b)(1)(A)(iii). On appeal, Robinson contends that he was not competent to stand

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

trial and his right to due process was violated when the amount of drugs that he possessed was not determined by the jury beyond a reasonable doubt.  We affirm.

## I.

Robinson is a 27-year-old man with a ninth-grade education and an I.Q. score ranging between 56 and 70.  He is able to read only at a first-grade level but he has a driver's license that he illicitly obtained by having his brother take the test on his behalf.  Robinson has received social security benefits since 1995 when he was diagnosed with mental retardation and an anxiety disorder.  He also has an extensive history of alcohol and cocaine abuse, using both most of his adult life.

On June 24, 1998, Minneapolis police attempted to detain Robinson for a routine traffic stop while he was driving his aunt's van with her permission.  Robinson sought to elude police, and a high-speed chase through a residential neighborhood ensued.  After crashing through a fence and into a tree, Robinson fled the van on foot.  Officers eventually subdued Robinson and arrested him.  A subsequent, warranted search of the van yielded a Sentry safe containing 86.9 grams of crack cocaine and in excess of one-half kilogram of marijuana.  Robinson's fingerprints were found on several of the bags contained in the safe.  Robinson denied having any knowledge of the contents of the safe when he was interviewed upon arrest; although he admitted to officers that a local drug dealer promised him $50 or $50 worth of crack cocaine if he delivered the safe to a nearby house.  Robinson later changed his story to account for his fingerprints on the bags of drugs: he says that while he was transporting the safe, he opened it in order to view its contents and decided to use a portion of the cocaine contained therein.

Shortly after Robinson was indicted for possession of cocaine with intent to distribute, both parties raised the issue of whether Robinson was competent to stand

2

trial.  Pursuant to 18 U.S.C. § 4241 (1994), Magistrate Judge Jonathan Lebedoff[2] ordered Dr. Maureen Hackett to conduct a psychiatric evaluation of Robinson and to provide a report to the district court.  Dr. Hackett interviewed Robinson for four hours, as well as interviewing Robinson's aunt, and conducting a mental status examination of Robinson.  Dr. Hackett concluded that he suffers from mental retardation, which "interferes with his ability to understand the proceedings against him and to participate in his defense."  (Appellant's App. at A0535.)  Dr. Hackett indicated that with Robinson's apparent willingness to learn about the legal proceedings pending against him combined with specific instruction, he feasibly could participate in his defense in the future.  In light of Dr. Hackett's findings presented at a competency hearing held on September 14, 1998, Judge Lebedoff determined that Robinson was incompetent to stand trial and ordered him to be hospitalized for a thorough assessment of whether he could become competent in the future.

Robinson completed a four-month inpatient hospitalization at the Federal Medical Center in Rochester, Minnesota, where he received multi-disciplinary treatment designed to restore competency to stand trial and educational classes focusing on the criminal justice system.  At the conclusion of Robinson's evaluation, members of his treatment team, Dr. Christine Scronce, who is the center's Director of Forensics, and Nancy Hein-Kolo, a psychology Ph.D. student, agreed that he was mildly mentally retarded and that his condition was unlikely to improve; however, Robinson's "condition [did] not presently render him unable to understand the nature and consequences of the proceedings against him or to assist properly in his own defense."  (Appellant's App. at A0520.)  Robinson was able to give a simple but accurate version of how he was found with cocaine in his possession, and that if the jury found him guilty, he could go to jail.  He also conveyed a basic understanding of the adversarial process:  his attorney's role was to assist him, the judge "tell[s] you what happens; whether you are going to do

---

[2]United States Magistrate Judge for the District of Minnesota.

3

some time or not," and the jury determines guilt or innocence. (Appellant's App. at A0518-19.) The medical center warden certified Robinson as competent.

During the second competency hearing held on February 12, 1999, Magistrate Judge Lebedoff heard the testimony of Dr. Scronce, Ms. Hein-Kolo, and Dr. Hackett. Robinson did not testify at either hearing or at trial. In April 1999, Judge Lebedoff issued his report and recommendation concluding Robinson had a rational understanding of the proceedings against him and was competent. Without objection, the district court adopted the magistrate judge's report. Robinson now appeals his conviction and his sentence.

## II.

"A defendant is competent to be tried if he has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.'" Wise v. Bowersox, 136 F.3d 1197, 1202 (8th Cir.) (internal footnote omitted) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)), cert. denied, 525 U.S. 1026 (1998). The conviction of an incompetent person is a violation of due process. United States v. Hinton, 218 F.3d 910, 912 (8th Cir. 2000); see also Drope v. Missouri, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). In determining competency, the district court may rely on numerous factors, including expert medical opinions and the court's observation of the defendant's demeanor. United States v. Long Crow, 37 F.3d 1319, 1325 (8th Cir. 1994), cert. denied, 513 U.S. 1180 (1995). Low intelligence or a mental deficiency does not render a defendant incompetent per se. Vogt v. United States, 88 F.3d 587, 591 (8th Cir. 1996); see also Miles v. Dorsey, 61 F.3d 1459, 1472 (10th Cir. 1995) ("The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to

4

. . . assist in his own defense.") (internal quotations omitted), <u>cert. denied</u>, 516 U.S. 1062 (1996).

Ordinarily, the district court's finding of competency is reviewed for clear error. <u>Vogt</u>, 88 F.3d at 591. However, when a party fails to object to the findings set forth in the magistrate judge's report and recommendation, as occurred in this case, we subsequently review those findings for plain error. <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990). Here, the record sufficiently supports the findings of the district court. The district court properly credited the testimony of Dr. Scronce and Ms. Hein-Kolo who had most recently examined Robinson. Dr. Hackett, in her testimony during the second competency hearing, reiterated her conclusion derived from her earlier examination of Robinson in conjunction with the first competency hearing that she believed that Robinson was incompetent <u>earlier</u>. She acknowledged that when she assessed Robinson, he had not had the benefit of the education and the competency training that he later received in Rochester. We do not consider the district court's reliance on the opinions of Dr. Scronce and Ms. Hein-Kolo in finding Robinson competent to be plain error.

Dr. Scronce and Ms. Hein-Kolo in their report to the court stated that in order for Robinson to adequately participate in his defense, his attorney needed to describe the court proceedings in simple, concrete terms, while avoiding technical descriptions. They further advised counsel to avoid open-ended questions, to repeat information, and to ask Robinson to restate the information in his own words. Robinson contends that his attorney's lack of training in "communications with those whose intelligence levels place them in the bottom 0.2% of the population" made consulting with his attorney difficult. (Appellant's Br. at 35.) Due process mandates that Robinson was entitled to consult with his lawyer with a <u>reasonable</u> degree of rational understanding and therefore be accorded a fair trial--not a perfect trial. Although Robinson's cognitive deficits may have placed additional responsibility on his counsel to ensure Robinson's understanding of the process, it certainly does not establish that he was incompetent to stand trial.

5

Furthermore, despite Robinson's substantial prior criminal record, he previously had never asserted that he lacked the competence to assist his attorney or understand the legal process.  We agree with the district court that Robinson, although of limited intellectual functioning, was competent to stand trial.

Robinson further contends that the district court should have raised <u>sua</u> <u>sponte</u> Robinson's competency during his trial.  The Supreme Court has stated that "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial."  <u>Drope</u>, 420 U.S. at 181.  The district court observed Robinson for the two days of the trial, and although he did not testify, Robinson gave no indication that his condition had changed or otherwise raised sufficient doubt about his mental competency.  <u>See</u> <u>Griffin v. Lockhart</u>, 935 F.2d 926, 930 (8th Cir. 1991) (delineating factors that indicate a contrary indication of competence including evidence of irrational behavior, the defendant's demeanor at trial, and any prior medical opinion on the defendant's competency).  Given all the circumstances presented to the experienced district judge, we cannot say that he erred in failing to halt the trial and hold a third competency hearing.

Robinson's contention that he was entitled to a jury finding of drug quantity prior to the district court imposing the statutory minimum sentence required by § 841 (b)(1)(A) has no merit in light of our holding in <u>United States v. Aguayo-Delgado</u>, 220 F.3d 926, 934 (8th Cir.) (holding sentence within the statutory range authorized by § 841(b)(1)(C) without reference to drug quantity was permissible under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000)), <u>cert. denied</u>, 121 S. Ct. 600 (2000).  Because Robinson's sentence is below the statutory maximum sentence irrespective of quantity, resentencing is not warranted.  Moreover, <u>Apprendi</u> did not overrule <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986), and facts implicating a statutory mandatory minimum sentence can still be determined by the sentencing judge using a preponderance of the evidence standard.  <u>See, e.g.</u>, <u>United States v. McIntosh</u>, 236 F.3d 968, 976 (8th Cir.) (recognizing that the

6

holding of <u>McMillan</u> still applies post-<u>Apprendi</u>), <u>cert. denied,</u> No. 00-1551, 2001 WL 378439 (U.S. May 14, 2001).

III.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.