UNITED STATES of America, Plaintiff,

v.

Ramona CUNNINGHAM, Defendant.

No. 4:07–cr–00008.

United States District Court, S.D. Iowa, Central Division.

June 5, 2008.

William L. Kutmus, Kutmus & Pennington, Des Moines, IA, for Defendant.

John S. Courter, United States Attorney, William C. Purdy, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

Michael A. Giudicessi, Faegre & Benson LLP, Jennifer S. Lampe, Iowa Attorney General's Office, Des Moines, IA, for Movant.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is the issue of the Defendant, Ramona Cunningham's, compe-

tence to stand trial. A hearing on the matter was held on May 23, 2008, at which the Court received testimonial and documentary evidence on the issue, and heard argument from the parties. *See* Clerk's No. 189. The parties were granted until May 30, 2008 to file any written supplements to their arguments, but have declined to do so. Accordingly, the Court considers the matter fully submitted.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Defendant is charged with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; twelve counts of fraud or misapplication concerning federal funds under the Workforce Investment Act, in violation of 18 U.S.C. § 665(a); sixteen counts of fraud or misapplication concerning a program receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A); and one count of obstruction of an investigation or inquiry, in violation of 18 U.S.C. § 665(c). *See* Clerk's No. 35. Co-defendant Archibald Brooks pleaded guilty on October 19, 2007 to the conspiracy charge and to one count of misapplication of funds concerning a program receiving federal funds. *See* Clerk's No. 74. Co-defendants Jane Barto, Karen Tesdell, and Daniel Albritton proceeded to trial on April 7, 2008. On April 24, 2008, the jury returned a not guilty verdict on the conspiracy charge against Defendants Barto and Albritton, a guilty verdict against Defendant Barto on the obstruction of an investigation or inquiry charge, and guilty verdicts against Defendant Tesdell on the conspiracy charge, twelve counts of fraud or misapplication concerning federal funds under the Workforce Investment Act, and sixteen counts of fraud or misapplication concerning a program receiving federal funds. *See* Clerk's No. 161. Judgment of Acquittal was entered for Defendant Albritton on April 28, 2008. *See* Clerk's No. 170. Posttrial motions by Defendants Barto and Tesdell are under consideration.

Defendant Cunningham did not proceed to trial in April of 2008 due to a claim by her counsel that she was incompetent to stand trial, a claim that was disputed by the Government. The issue of competency originally arose after the Defendant's October 2007 suicide attempt, after which she was hospitalized. The Court scheduled a competency hearing and continued trial as to Defendant Cunningham indefinitely, but found that the interests of justice were not served by delaying the trial of the co-defendants. *See* Clerk's No. 122. The competency hearing occurred on May 23, 2008, at which the Court received evidence and heard the testimony of the Defendant's psychiatrist, Dr. Scott Zentner,[1] and psychiatrist, Dr. George Seiden,[2] who testified for the Government.

Both experts agree that the Defendant suffers from Major Depressive Disorder[3]

---

1. Dr. Zentner was board certified in the practice of general psychiatry in 1993. He currently works at a community mental health center specializing in the diagnosis and treatment of serious mental disorders. Dr. Zentner is the Defendant's treating physician as of approximately March 28, 2008. He has participated in competency evaluations between 15 and 20 times in the past.

2. Dr. Seiden specializes in psychiatry and forensic psychiatry. He is board certified in both general psychiatry and forensic psychia-

try, and has been in the private practice of psychiatry since 1979. He has performed approximately 2,000 competency examinations over the course of his career.

3. Major Depressive Disorder is generally characterized by one or more major depressive episodes without a history of manic, mixed, or hypomanic episodes. *See generally*, American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, 369 (2000).

that is likely recurrent, and Dysthymic Disorder.[4] They also agree that the Defendant has suicidal ideation, meaning she contemplates suicide, with the severity of the contemplation and actions associated therewith varying in intensity. They disagree about the presence of any past instances of psychosis. Dr. Zentner attributes psychosis to the Defendant due to her past claims of hearing people yelling her name at night. Dr. Seiden, on the other hand, believes that the Defendant's initial treating physician after her suicide attempt, Dr. Herbert Vandenberg, presumed the Defendant was delusional because she complained on admission about publicity, not realizing that newspapers in Iowa really were reporting about her life and that information about her was on the Internet. Dr. Seiden stated that hearing voices yelling one's name, without more, does not qualify as an auditory hallucination, and should be considered merely relevant diagnostic criteria rather than an actual hallucination. Both Dr. Zentner and Dr. Seiden agree that the Defendant does not currently display any psychotic features, though Dr. Zentner indicated that he cannot rule out that some of her symptoms might be psychotic in nature and he is treating her accordingly. Both experts agree that the Defendant's current medication regimen does not significantly impact on her competency to stand trial.

Dr. Zentner believes that the Defendant cognitively understands the legal proceedings involved with going to trial in this case. He believes, however, that the Defendant continues to experience unremitting depression and anxiety, which cause her to have a difficult time concentrating and attending to questions. He indicated that he often has to repeat questions to the Defendant and that she frequently does not seem to hear or understand what was being asked. Dr. Zentner also specifically noted a May 13 or 14, 2008 meeting where he observed the Defendant with her counsel. According to Dr. Zentner, the Defendant did not seem to be interested in counsel's assistance and was detached from her interactions with him. Dr. Zentner stated that he saw no closeness or willingness by the Defendant to work with her counsel. He attributes this to nihilistic behavior from the Defendant; she believes there is no point in proceeding to trial because people have made up their minds about her guilt. He indicated that the Defendant will not volunteer information about herself, and that significant effort is necessary to get information from her.

Based on these observations, Dr. Zentner opined that the Defendant is not able to maintain a consistent defense, is unable to listen to the testimony of witnesses and inform her lawyer of any distortions or misstatements, and does not have the ability to make simple decisions in response to well-explained alternatives. He believes that, if she were to testify, the Defendant would be overwhelmed by anxiety and become non-responsive as a defense mechanism, rendering her unable to concentrate enough to participate in the process, or that she would give curt answers to get the questioning over with as soon as possible. He stated that the Defendant's belief that she will be found guilty no matter what she does, along with the fact that she does not care about that result, makes her apathetic to the legal process and causes her to be unmotivated to assist in it.

By contrast, Dr. Seiden believes that the Defendant is cynical rather than nihilistic. Dr. Seiden stated that nihilism, in psychiatric terms, is when a person believes she is already dead, or that she is dying or has

---

**4.** Dysthymic Disorder is generally characterized by a chronically depressed mood that occurs for most of the day more days than not for at least 2 years. *See id.* at 376.

a horrible illness, without any evidence that it is true. Dr. Seiden stated that such nihilistic delusions are seen typically in cases of psychotic depression. He indicated that the Defendant understands that she is in federal court because her program received money from the United States Government, and that she knows she is accused of taking money from her program. When Dr. Seiden asked the Defendant to provide her version of the events that led to her arrest, however, she said she was not willing to do so. Dr. Seiden stated that it is not uncommon for individuals facing criminal charges to have the viewpoint that the outcome of the trial is predetermined, and that he has seen this occur numerous times in people who are depressed.

Dr. Seiden indicated that the Defendant was able to identify her attorney, and that she recognized that her attorney's job was to help her by trying to find out the truth. Dr. Seiden further indicated that the Defendant told him she would initially be disappointed if a witness at trial said something she believed was untrue, then indicated she would want to go home, and thirdly indicated she would want to call the witness a liar. When asked what she would actually do in such a circumstance, the Defendant told Dr. Seiden that she would tell her attorney. The Defendant also told Dr. Seiden that she understood she had a right to testify, but could not be forced to do so, and that she understood the decision whether to testify would be made between she and her attorney. Dr. Seiden testified that he never had to repeat questions to the Defendant during the interview, and that the Defendant answered the questions she wanted to answer and did not answer the questions she did not wish to answer. Dr. Seiden took this as indicating that the Defendant had the ability to concentrate and that she was able to adhere to his initial advice that she did not have to answer his questions. He

further indicated that testing showed that the Defendant's memory, both short and long-term, were intact.

Based on the manner in which the Defendant interacted with him, Dr. Seiden believes the Defendant has the ability to assist her counsel in her defense. He indicated that the Defendant has the ability to listen to testimony, relate relevant information, and to inform her attorney of witnesses she may want to call. He further opined that the Defendant has the ability to give her opinion as to whether or not she agrees with testimony, and to let her attorney know of her opinion in that regard. Though she does not want to go trial and indicates such to others, Dr. Seiden believes she is able to do so. He does not believe the Defendant's depression is currently severe enough to interfere with her ability to go to trial. Dr. Seiden indicated that, while the Defendant's depression and possible suicidal ideation might make it difficult for her attorney to communicate with and relate to her at times, and might require more effort on her attorney's part, the Defendant's condition does not render her unable to communicate with her attorney or to assist in her own defense. He believes that most of the Defendant's angst stems from her anticipation of trial and the shame she feels over the charges lodged against her and the effects such charges have had on her family. Dr. Seiden believes that this anticipation is worse for her than will be the actual proceeding, and that the Defendant's condition is likely to improve once legal proceedings conclude.

## II. ANALYSIS

■■■ " 'Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine

witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.'" *Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (quoting *Riggins v. Nevada,* 504 U.S. 127, 139–40, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring) (citing *Drope v. Missouri,* 420 U.S. 162, 171–72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975))). The trial or conviction in federal court of a legally incompetent individual is a violation of the due process of law guaranteed by the Fifth Amendment of the United States Constitution.[5] *Medina v. California,* 505 U.S. 437, 453, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992); *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (citing *Bishop v. United States,* 350 U.S. 961, 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956) (per curiam) (granting writ of certiorari, vacating judgment, and remanding to the district court for a hearing on the sanity of the defendant at the time of trial)); *accord United States v. Hinton,* 218 F.3d 910, 912 (8th Cir.2000). Thus, "[i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope* 420 U.S. at 171, 95 S.Ct. 896. Put another way, "[a] defendant is mentally incompetent to stand trial if a preponderance of the evidence indicates that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *United States v. Ghane,* 490 F.3d 1036, 1040 (8th Cir.2007) (citing 18 U.S.C. § 4241(d)). This is, essentially, a two-part test, with incompetency to stand trial being established if either part is demonstrated by a preponderance of the evidence.

■ With regard to the first part of the test, the Court must first determine if the Defendant has "a rational as well as factual understandings of the proceedings against [her]." *United States v. Robinson,* 253 F.3d 1065, 1067 (8th Cir.2001) (internal quotation and citations omitted). Here, there is no dispute by the parties that the Defendant has a rational and factual understandings of the legal proceedings against her. This is amply supported by the evidence produced by both the Government and the Defendant. Dr. Seiden's report[6] indicates that the Defendant has a general understanding that she is accused of taking money, and that the United States Attorney's Office is involved because the money at issue came from the United States Government. *See* Gov't Ex. 2. Dr. Zentner's evaluation[7] similarly indi-

---

**5.** The Fifth Amendment states:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment of indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

The due process clause of the Fourteenth Amendment imposes the same barrier to trial and conviction of legally incompetent individuals in state criminal proceedings. *Griffin v. Lockhart,* 935 F.2d 926, 929 (8th Cir.1991) (citing *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) and *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)).

**6.** Dr. Seiden's report was issued on March 16, 2008, and stems from an interview with the Defendant on March 14, 2008.

**7.** Dr. Zentner's evaluation of the Defendant occurred on March 28, 2008. A summary of the treatment he has provided the Defendant

cates that the Defendant related to him that the prosecutor contends she received excessive pay in her role working with a board of elected officials. *See* Def. Ex. G. Even the Neuropsychiatric Evaluation conducted on October 19, 2007 by Dr. Vandenberg, shortly after the Defendant's suicide attempt, indicates that the Defendant stated she was "involved in a law suit accused of embezzling funds from a company in Iowa where she was CEO." *See* Def. Ex. B. The evidence clearly supports the conclusion of the parties that the Defendant has a "rational as well as factual understanding of the proceedings against [her]," and the Court concurs with the parties that the Defendant is legally competent in this regard. *Robinson*, 253 F.3d at 1067.

■ The dispute in this matter instead centers on the second part of the test, that is, whether the Defendant is able to "assist properly in [her] defense." *Ghane*, 490 F.3d at 1040. This requires that the Defendant have the "'ability to consult with [her] lawyer with a reasonable degree of rational understanding.'" *Wise v. Bowersox*, 136 F.3d 1197, 1202 (8th Cir.1998) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). As discussed at the hearing, Dr. Zentner, the Defendant's current treating psychiatrist, believes the Defendant would be overwhelmed with anxiety at trial and become non-responsive as to what is occurring. Dr. Seiden, in contrast, believes the Defendant has the ability to concentrate on what is transpiring and to assist her attorney in her defense. He believes the Defendant's depression might make interacting with her attorney more difficult, but that she is not incapable of assisting him in mounting a defense to the charges.

■ The Court has been presented with informative diagnoses from two qualified experts, one the Defendant's treating psychiatrist, and the other an experienced forensic psychiatrist. After considering the evidence on this matter, however, the Court finds Dr. Seiden's determination regarding the Defendant's competency to be more persuasive. *See United States v. Martinez*, 446 F.3d 878, 882 (8th Cir.2006) (noting that a district court may rely on one of two competing competency opinions provided by qualified experts). Dr. Seiden is trained and certified in forensic psychiatry, which is essentially the application of psychiatric principles and techniques to legal issues. The issue before the Court is not whether the Defendant is ill, as it is undisputed that she suffers from major depressive and dysthymic disorders, both of which are very serious conditions. The sole issue before the Court is whether, *despite* her illness, the Defendant is capable of properly assisting in her defense. Dr. Seiden's forensic psychiatric evaluation is tailored more precisely to the legal requirements with which the Court is concerned. Under these circumstances, where both experts largely agree on the diagnoses, Dr. Seiden's vast experience of having conducted approximately 2,000 competency examinations, along with his training and experience in applying psychiatric principles and techniques to legal issues, is compelling to the Court.

■ Indeed, Dr. Zentner admitted that as the Defendant's treating psychiatrist, he must be careful, when testifying relative to competency issues, to restrict his opinion to the mental health of the patient. Accordingly, Dr. Zentner does not employ some of the more comprehensive criteria utilized in standard competency evaluations performed by forensic psychologists or psychiatrists, because the mental health of the patient is his "comfort zone." He further acknowledged that there is an in-

was provided by Dr. Zentner on May 14, 2008. *See* Def. Ex. H.

herent conflict in being the treating physician and in issuing a competency opinion, because the treating physician, bound by the hypocratic oath, must always be guided foremost by the best interests of the patient, always bearing in mind what will help the patient recover from her illness. Dr. Zentner stressed, however, that he has tried his best to be objective in his competency analysis. Dr. Seiden elaborated on this issue, indicating that a forensic evaluation may do harm to the patient via the rendered opinion, in that a forensic evaluation is directed toward the objective truth of the data regarding competency to stand trial, whereas a treating physician is ethically bound by the principle of "first do no harm." While Dr. Zentner's status as treating psychiatrist means he is intimately familiar with the Defendant's medical and psychiatric state, his opinion is admittedly colored by his ethical obligations. Dr. Zentner's opinion also appears based more on a belief that an individual at risk for suicide in the context of major depressive disorder could not be found competent to stand trial.[8] A diagnosis of a mental disorder, however, or the fact that the stresses of trial may affect treatment and recovery efforts, does not mean that an individual is legally incompetent to stand trial. *See Vogt v. United States*, 88 F.3d 587, 591 (8th Cir.1996) (noting that a mental impairment or deficiency of some sort does not automatically render a defendant incompetent to stand trial); *see also* John T. Philipsborn, *Dealing with Experts on Competence to Stand Trial: Suggestions and Approaches—Part Two*, The Champi-

on, March 2008, at 45 (noting that there is a tendency for mental health examiners to simply present opinions on an individual's disorders and how they manifest, without consideration of the nature of the legal inquiry before the court).

The Court's view of the evidence relevant to the competency determination also coincides with Dr. Seiden's determination. Dr. Seiden indicated that the Defendant "currently has a rational and factual understanding of the proceedings against her." *See* Gov't Ex. 2. He noted that she was able to "recall and relate facts pertaining to her actions and whereabouts at specific times ... [and] has the ability to assist counsel in locating and examining relevant witnesses." *See id.* He noted that she has the ability to maintain a consistent defense. *See id.* His report further indicates that "she has the ability to listen to the testimony of witnesses and inform her lawyer of any distortions or misstatements," and is "capable" of testifying in her own defense.[9] *See id.* Dr. Seiden notes that the Defendant understands the concept of a plea bargain, but had previously declined to plead guilty, pointing out that she did not do what the Government said she did. Although she believes people in Iowa think she is guilty, the evidence shows that the Defendant has declared her innocence repeatedly to medical personnel. *See, e.g.*, Def. Ex. I (discharge summary noting that the Defendant is "very emphatic" in maintaining her innocence).[10]

---

8. Dr. Zentner acknowledged, however, that suicide is a complex phenomena, and indicated that if he thought the Defendant was a significant suicide risk, he would take action toward her involuntary commitment.

9. Dr. Seiden's report indicates that, when asked what the Defendant would actually do if a witness testified to something she believed

was untrue, she stated that she would tell her attorney. *See* Gov't Ex. 2.

10. A progress note from March 10, 2008 indicates that the Defendant verbalized the charges against her, expressed anger over perceived injustices, and expressed a desire to prove her innocence.

The Defendant also appears to be cognizant of the proceedings in the case and to take an active interest in them, as seen, for example, in the March 5, 2008 progress note [11] indicating that the Defendant observed an envelope in her physician's office addressed from the United States Attorney's Office, and inquired about it. Dr. Zentner also noted in his testimony that the Defendant had told him that he would probably get a call from her attorney. This is precisely the sort of behavior that shows the Defendant is capable of assisting in her defense. She knew the procedural context of the case, that her competency to stand trial was at issue, and informed her treating psychiatrist to expect a call from her counsel in that regard. The Defendant was also able to relate to Dr. Seiden some of the procedural history of the case, such as the fact that her attorney had petitioned for a change of venue but had been denied.

█ Furthermore, the Court's observations of the Defendant during the competency hearing support a finding that she is capable of assisting in her defense. "The district court may base its competency decision on numerous factors, 'including expert medical opinions and the court's observations of the defendant's demeanor.'" *Ghane*, 490 F.3d at 1040 (quoting *Robinson*, 253 F.3d at 1067); *accord United States v. Long Crow*, 37 F.3d 1319, 1325 (8th Cir.1994). The Defendant was relatively attentive to the proceedings during the competency hearing. She was obviously uncomfortable with the number of people watching the proceedings, as she wore sunglasses until ordered to remove them, and remained seated and facing the bench even during a brief recess. She paid reasonably close attention to the testimony presented, however, and in one instance briefly said something to her attorney in reaction to a part of Dr. Seiden's testimony. The Defendant's level of attentiveness noticeably increased, moreover, when the Court made inquiry of witnesses or counsel during the proceeding. Her ability to pay attention to the testimony of witnesses and the statements of the Court, along with the apparent ability to make her counsel aware of issues that arose during the presentation of evidence, comport with Dr. Seiden's finding that the Defendant is capable of assisting in her defense.

Though the Court believes that proceeding to trial may or may not be in the best interests of the Defendant from a mental health standpoint, her best interest is not the legal inquiry under consideration. The only issue is whether, despite her condition and regardless of whether it is in her best interest from a medical and psychiatric standpoint, the Defendant is capable of assisting in her defense. Dr. Seiden believes that the Defendant is capable of assisting her lawyer in her defense, though her diagnoses may make it more difficult at times. The Court's view of the evidence leads it to agree with Dr. Seiden's opinion. While the Defendant does not want to go to trial and has serious anxiety related to the legal proceedings, a lack of desire to help her attorney is different than an inability to do so. Even Dr. Zentner testified that he could not unequivocally say that the Defendant is unable to communicate with her counsel, noting only that her major depression makes her less able to communicate with her attorney and assist in her defense than she would be absent her mental health conditions. Added difficulty for counsel in communicating with a Defendant due to a mental impairment of some sort does not, however, make the Defendant incompetent to stand trial. *See*

11. The Defendant's medical records were available to and reviewed by both experts who testified in this matter, and were part of their analyses of the Defendant's competency.

*Robinson,* 253 F.3d at 1068 ("Due process mandates that Robinson was entitled to consult with his lawyer with a *reasonable* degree of rational understanding and therefore be accorded a fair trial—not a perfect trial. Although Robinson's cognitive deficits may have placed additional responsibility on his counsel to ensure Robinson's understanding of the process, it certainly does not establish that he was incompetent to stand trial."). Based on the evidence presented on this matter, the Court concurs with Dr. Seiden's opinion, and finds that the Defendant has "sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding." *Dusky* 362 U.S. at 402, 80 S.Ct. 788. The Court believes the Defendant is capable of assisting in her defense, and accordingly finds that she is currently competent to stand trial.

## III. CONCLUSION

There is no dispute that the Defendant currently suffers from serious mental health conditions. Neither the parties nor the Court minimize the Defendant's condition in any way. It is obvious that the Defendant needs continued psychiatric treatment and continued supervision by caring individuals. The Court commends the medical professionals and the Defendant's family members, particularly her sister, for providing the care and services the Defendant so clearly needs. The existence of a mental impairment, however, does not make an individual incompetent to stand trial. Nor does added difficulty in communicating with an individual necessarily make that individual incapable of assisting counsel in presenting a defense. The only issue before the Court is whether the Defendant is capable of assisting in her defense—whether she has the ability to consult with her lawyer with a reasonable degree of rational understanding. The Court believes that a preponderance of the evidence demonstrates that she is able to

do so. Accordingly, the Court finds that the Defendant is competent to stand trial. Trial is hereby set for the two-week period beginning June 30, 2008, in Davenport, Iowa.

IT IS SO ORDERED.