# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2122

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of North Dakota. |
| Kyle Ray DeCoteau, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: December 14, 2010
Filed:  January 12, 2011

_____

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Kyle Ray DeCoteau was charged with aggravated sexual abuse of a child and abusive sexual contact in violation of 18 U.S.C. §§ 2241(c), 2244(a)(5), and 1153. A jury convicted him on two counts of each offense.  His motion for judgment of acquittal on one count of aggravated sexual abuse was granted, and the district court[1] sentenced him to 360 months on the other count, to run concurrently with 51 month sentences for his two abusive sexual contact convictions.  DeCoteau appeals, arguing that the district court erred in finding him competent to stand trial, in denying his

_____

[1] The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

motion for judgment of acquittal on his remaining conviction for aggravated sexual abuse, and in concluding that it lacked authority to sentence him below a statutory mandatory minimum. We affirm.

I.

Kyle DeCoteau is a member of the Turtle Mountain Band of Chippewa Indians. He lived on the reservation and was diagnosed at an early age to have mild mental retardation. He sometimes stayed with a girlfriend named Kelly Schroeder. Kelly lived with her sister Karen and her family in a three bedroom trailer. Karen and her husband had two young daughters, "S.S." and "R.S.L." DeCoteau visited the Schroeders from time to time between December 2006 and the fall of 2007, occasionally spending the night to babysit S.S. and R.S.L. In the spring of 2008 S.S. and R.S.L. told their mother that DeCoteau had sexually abused them. Karen reported the abuse to the Turtle Mountain Child Welfare Office, which referred the reports to the FBI.

Special Agent Ryan O'Neil investigated the allegations. DeCoteau initially denied abusing S.S. or R.S.L. Later he told O'Neil that S.S. had once come up to him, took his hand, and guided one of his fingers into her vagina. O'Neil asked DeCoteau to provide a written statement, but DeCoteau told him he could not read or write. He later provided a taped statement and was released.

O'Neil scheduled a meeting between S.S. and a forensic interviewer at the Northern Plains Children's Advocacy Center. During that interview, S.S. disclosed that DeCoteau had had inappropriate sexual contact with her when she was five years old on more than one occasion. R.S.L. also told an interviewer that DeCoteau had sexually abused her. Subsequently the government filed a four count indictment in June 2008, charging DeCoteau with two counts of aggravated sexual abuse of a child

for penetration of S.S.'s vagina by his penis and by his finger.[2]  DeCoteau was also charged with two counts of abusive sexual contact for other abusive incidents with S.S. and R.S.L.[3]

DeCoteau moved for a competency evaluation before trial. Each side hired experts who conducted psychological and intellectual tests on DeCoteau.  The results of the tests confirmed that he had an IQ of between 55 and 57, which was in the lower range of individuals with mild mental retardation. The experts generally agreed that DeCoteau understood the seriousness of the charges against him, but they expressed differing opinions on whether he could adequately participate in his own defense. Although recognizing "serious questions concerning DeCoteau's level of functioning, and, in part, his competence," the district court ultimately found that DeCoteau was "competent to stand trial."

At trial the government's central witness was S.S., who was then still under the age of ten.  S.S. identified DeCoteau as her abuser by writing his name down on a piece of paper.  She then circled on an anatomical diagram of a child the places where it would be a "bad touch" for another person to touch her.  She also indicated that

---

[2] To prove aggravated sexual abuse of a minor, the government needed to show that DeCoteau (1) knowingly engaged in a sexual act with a person under the age of 12, (2) is an Indian, and (3) the offense occurred in Indian Country.  See 18 U.S.C. §§ 1153, 2241(c).  The minimum sentence for aggravated sexual abuse is 30 years.  Id. § 2241(c).

[3] To prove abusive sexual contact, the government needed to show that DeCoteau "(1) knowingly and intentionally engaged in sexual contact with a person under the age of 12; (2) intended to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; (3) is an Indian; and (4) committed the act in Indian country." United States v. Espinosa, 585 F.3d 418, 425 (8th Cir. 2009) (citing 18 U.S.C. §§ 1153, 2244(a)(1), 2241(c), and 2246(3)).  As relevant to this case, the minimum sentence for abusive sexual contact is "any term of years."  18 U.S.C. § 2244(a)(5).

DeCoteau had touched her in "bad places."  The crucial line of inquiry continued as follows:

Q. When you say that . . . somebody touched you there, who touched you?

A. Kyle.

Q. Do you know what he touched you with?

A. His hand.

Q. With his hand?  [S.S.], when he touched you with his hand, was it above the clothes or under the clothes?

A. Under.

Q. Okay.  So was it his [bare] hand on your [bare] skin?

A. Yes.

Q. Okay.  Do you know the difference between inside and out, [S.S.]?

A. Yes.

Q. So when he touched you in those parts, was it inside or outside?

A. Inside.

Q. [S.S.], did he just use his hand, or was there any other parts?

A. Just his hand.

R.S.L. also testified that DeCoteau had touched her "where he shouldn't have." While she was sleeping in her parents' room, DeCoteau woke her up by touching her "middle part" or "frog," the term she used for the part she uses to go to the bathroom. Other witnesses confirmed that DeCoteau was sometimes left unsupervised with the girls during the time period alleged in the indictment.

At the end of the trial, the district court submitted two counts of aggravated sexual abuse and two counts of abusive sexual contact for the jury's consideration. After deliberating the jury found DeCoteau guilty on all counts.  The district court

granted his motion for judgment of acquittal on one count of aggravated sexual abuse, however, because there had been "insufficient evidence to support" a finding of contact "between the penis and the vulva." The court otherwise denied DeCoteau's motion for judgment of acquittal. It then sentenced him to 360 months, the mandatory minimum for aggravated sexual abuse, to run concurrently with 51 month sentences for abusive sexual contact with S.S. and R.S.L.

DeCoteau appeals. He argues that the district court abused its discretion in finding that he was competent to stand trial and failed to support that decision with facts in the record. He also argues that the evidence was insufficient to sustain his conviction for aggravated sexual abuse, claiming that S.S.'s testimony that he had touched her on the "inside," even when combined with his own statement that she had guided his hand to touch her vagina, was insufficient to show digital penetration as required by the statute. Finally, DeCoteau argues that the district court erred in stating that it lacked authority to sentence him below the statutory mandatory minimum.

## II.

DeCoteau argues that the district court abused its discretion in finding him competent to stand trial. Determining whether a defendant is competent to stand trial "is committed to the discretion of the district court." United States v. Whittington, 586 F.3d 613, 617 (8th Cir. 2009). A district court's competency determination is a factual finding this court will affirm "unless clearly arbitrary or unwarranted" or "clearly erroneous." Id. (citations omitted). A defendant is competent to stand trial if he possesses a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and [if] he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam).

DeCoteau charges that the district court "made no actual fact findings" in its competency order. He contends that the district court's statement that one expert "certainly raised serious questions concerning DeCoteau's level of functioning and, in part, his competence" undermined its finding of competence. He also asserts that his short term memory problems made him unable to consult sufficiently with his lawyer or to assist in his own defense. The government responds by highlighting its expert's extensive testimony that DeCoteau understood the charges against him and that he could fully assist his attorney in defending them.

The district court examined at length the test results obtained by the two experts. Both agreed that DeCoteau's IQ of 55 to 57 placed him in the mild mental retardation range. The government's expert, Dr. Robert Lisota, administered a number of tests on Decoteau, including the "Competence Assessment for Standing Trial for Defendants with Mental Retardation." On the Basic Legal Concepts portion of that test DeCoteau scored an 18, just below the 18.3 mean score of mentally retarded individuals found competent to stand trial. DeCoteau also received a score of 14 on the "Skills to Assist Defense" portion of the test, while the mean score for competent individuals was 10.7. Other assessments administered by Dr. Lisota showed that DeCoteau answered questions appropriately and generally responded "reasonably well after discussing them in detail" even after he had initially displayed confusion. The court cited Dr. Lisota's opinion that while "Decoteau has very significant cognitive deficits, they do not rise to a level which would significantly compromise his ability with regard to the nature and consequences, nor pose a significant hindrance in his ability to assist in his defense." See United States v. DeCoteau, 648 F. Supp. 2d 1145, 1147–49 (D.N.D. 2009).

The district court also examined the countervailing testimony of DeCoteau's expert, Dr. Peter Peterson. In Dr. Peterson's opinion, DeCoteau presented "significant intellectual limitations which raise questions regarding his mental competence." Dr. Peterson also concluded that DeCoteau's low IQ raised "serious questions" about his

ability to understand the legal process. Dr. Peterson indicated that he was "doubtful" whether DeCoteau was capable of effectively assisting in his own defense. See generally id. at 1149–50.

Based on "the file and the evidence presented at the competency hearing," the district court ultimately found that Decoteau was "mentally competent to stand trial and to participate in the judicial proceedings to determine the validity of the criminal charges filed against him." Id. at 1150. Though both experts were "well-trained, competent, and capable professionals," the court credited Dr. Lisota's testimony more and "expressly [found] by a preponderance of the evidence that the defendant, Kyle DeCoteau, is competent to stand trial." Id. at 1151. Our review of the record does not show that the district court abused its discretion in making this finding.

The district court made its competency determination after considering both experts' detailed testimony concerning DeCoteau's functioning, his ability to understand the charges against him, and his ability to participate in his own defense. As we have pointed out, it is "certainly within a district court's province to choose one expert's opinion over a competing qualified expert's opinion." United States v. Ghane, 593 F.3d 775, 781 (8th Cir. 2010); see United States v. Ameri, 412 F.3d 893, 899 (8th Cir. 2005), cert. denied, 546 U.S. 1206 (2006). While the district court did not make detailed factual findings of its own, its order showed it had carefully considered the expert evidence offered by both sides before clearly relying on Dr. Lisota's testimony. DeCoteau can point to no authority showing that the district court's decision was clearly erroneous. Compare United States v. Robinson, 253 F.3d 1065, 1068 (8th Cir. 2001) (no plain error when the district court found that a defendant with mild mental retardation was competent to stand trial). We conclude that the district court did not commit error or abuse its discretion in finding DeCoteau competent to stand trial.

III.

DeCoteau also alleges that there was insufficient evidence to support his conviction for aggravated sexual abuse of a child. "We will affirm a conviction against claims of insufficient evidence unless the evidence, viewed in a light most favorable to the conviction, is such that no reasonable jury could have found guilt beyond a reasonable doubt." United States v. Rojas, 520 F.3d 876, 881 (8th Cir. 2008). To convict a defendant of aggravated sexual abuse of a child, the government must prove that the defendant "knowingly engage[d] in a sexual act with another person who has not attained the age of 12." United States v. Lohnes, 554 F.3d 1166, 1169 (8th Cir. 2009), citing 18 U.S.C. § 2241(c). The statute defines "sexual act" to include "the penetration, however slight, of the anal or genital opening of another by a hand or finger." 18 U.S.C. § 2246(2)(C). An individual convicted of aggravated sexual abuse of a child faces a sentence of "not less than 30 years." Id. § 2241(c).

DeCoteau argues that the government did not establish the requisite element of digital penetration. The evidence the government offered at trial on this element included DeCoteau's taped statement that S.S. had once taken his hand and guided one of his fingers into her vagina, as well as her reference to an anatomical drawing before testifying that DeCoteau had touched her on the "inside" of "those parts." DeCoteau argues that S.S.'s "inside" statement is insufficiently anatomically specific to prove digital penetration and that his admission that S.S. had once led his finger into her vagina is otherwise uncorroborated and untrustworthy. He cites two prior decisions of this court which reversed convictions for aggravated sexual abuse of a child because of insufficiently specific evidence about what part of the child was touched. See United States v. Reddest, 512 F.3d 1067, 1071–73 (8th Cir. 2008); United States v. Plenty Arrows, 946 F.2d 62, 65 (8th Cir. 1991).

Viewing the evidence in the light most favorable to the verdict as we must, we conclude that there is sufficient evidence to prove digital penetration of S.S. by

-8-

DeCoteau. First, we note that a victim's testimony alone can be sufficient to prove aggravated sexual abuse. United States v. Kirkie, 261 F.3d 761, 768 (8th Cir. 2001); United States v. Wright, 119 F.3d 630, 634 (8th Cir. 1997). S.S. testified at trial that "Kyle" touched her with his bare hand "under" her clothes, and that he touched her on the "inside," not the "outside," of "those parts" she had circled on the anatomical drawing. Based on the sequence of the government's questions and S.S.'s answers, we conclude that a reasonable jury could find from her testimony that DeCoteau had touched S.S. in her vagina "inside" her body. The government also introduced DeCoteau's prior taped admission that he had touched S.S. in her vagina (allegedly because she had guided his hand there).

A reasonable jury could find from all of this that the government had submitted sufficient evidence of digital penetration. See, e.g., United States v. Espinosa, 585 F.3d 418, 424–25 (8th Cir. 2009) (sufficient evidence to prove charge of aggravated sexual abuse where victim testified that the defendant "stuck his in me," victim used an anatomically correct diagram, circled the genital area, and said that the defendant touched her there; physical evidence corroborated her testimony); United States v. Seymour, 468 F.3d 378, 388 (6th Cir. 2006) (sufficient evidence to prove charge of aggravated sexual abuse where victim testified that defendant "touched me between my legs" where she would "wipe after you go pee" and answered "yes" to the questions "did he touch you inside of your underpants" and "it was actually his fingers right on your bare skin?").

We are unpersuaded by DeCoteau's attempt to analogize this case to either Reddest or Plenty Arrows. In Reddest, we found insufficient evidence to support the charge of aggravated sexual abuse where the defendant had touched the victim "where a woman puts the tampon in," but had not "put any part of his hand in [her]." 512 F.3d at 1072. Similarly in Plenty Arrows, we reversed a defendant's conviction for aggravated sexual abuse of a child because the victim only testified that the defendant touched him "from my back of my behind"; such testimony "lack[ed] the necessary

[anatomic] specificity." 946 F.2d at 65. Unlike these cases, here the government offered S.S.'s testimony that Kyle touched her on the "bare" skin "under" her clothes and put his "bare" hand on the "inside" of "those parts." Combined with DeCoteau's taped admission to touching S.S.'s vagina and S.S.'s prior identification on an anatomically correct diagram of the places where Kyle performed a "bad touch" on her, we believe the evidence is more than sufficient to uphold his conviction for aggravated sexual abuse of a child.

IV.

Finally, DeCoteau argues that the district court erred in stating that it lacked authority to sentence him to a term below the statutory minimum in 18 U.S.C. § 2241(c). That statue provides that a conviction for aggravated sexual abuse requires a sentence of at least 30 years to life. DeCoteau argues however that 18 U.S.C. § 3551(a), the "statutory gateway for all federal sentencing," incorporates by reference the "parsimony clause" of § 3553(a) directing a district court to impose a sentence "sufficient, but not greater than necessary, to comply with [its] purposes." DeCoteau argues that § 3553(a)'s parsimony provision must be followed even if there is a statutory mandatory minimum unless the statute under consideration contains an "except as otherwise specifically provided by law" clause. Because § 2241(c) lacks such a clause, he argues that the district court *did* have authority to sentence him to a term of less than thirty years.

We have already decided this issue elsewhere. In United States v. Billue, 576 F.3d 898, 903–04 (8th Cir.), cert. denied, 130 S. Ct. 765 (2009), for example, we held that sentencing courts may not use the § 3553(a) factors to reduce a defendant's sentence below an applicable mandatory minimum statute. Congress has provided that the minimum available sentence for aggravated sexual abuse is 30 years. The only exceptions to this rule are laid out in 18 U.S.C. §§ 3553(e) (substantial assistance) and (f) (safety valve), neither of which is applicable here. We thus reject

DeCoteau's argument that the district court erred by holding that it lacked authority to sentence him below the statutory mandatory minimum of 30 years.

V.

For these reasons we affirm the judgment of the district court.

_____