# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4034

_____

United States of America,

        Appellee,

v.

Leroy Clifford Reddest, also known
as Leroy Clifford Jack,

        Appellant.

Appeal from the United States
District Court for the
District of South Dakota.

[PUBLISHED]

_____

Submitted: September 25, 2007
Filed: January 23, 2008

_____

Before WOLLMAN, HANSEN, and RILEY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Appellant Leroy Reddest appeals his convictions of five counts of sexual abuse. Reddest argues that the evidence is insufficient to support the jury's determination on count IV (that he digitally penetrated the victim's genital opening) and that the district court erred by denying his motion for judgment of acquittal on all five counts. We reverse Reddest's conviction on count IV, and we affirm his convictions on the remaining counts.

## I.

Consistent with our standard of review, the following facts are described in the light most favorable to the verdict. United States v. Honarvar, 477 F.3d 999, 1000 (8th Cir. 2007). M. Y., a minor, was born on January 8, 1990, and she was raised by her maternal grandparents, who legally adopted her at age 8. During M.Y.'s childhood, it was not uncommon for Reddest to stay at her grandparents' home. Reddest was a close family friend, and at the time of the sexual abuse, Reddest was staying at M.Y.'s grandparents' home helping M.Y.'s grandfather with odd jobs that he was physically unable to perform. M.Y. and her cousins were comfortable with Reddest and called him "Grandpa Leroy."

Reddest sexually abused M.Y. several times between February and November of 2003. Reddest was 57 years old at the time of the abuse; M.Y. was 13. On two occasions, Reddest forced sexual intercourse with M.Y. and threatened to harm her if she told anyone about the assault. M.Y. also testified that Reddest touched her genitalia on a separate occasion. All three incidents took place in M.Y.'s grandparents' home in the Kyle Community on the Pine Ridge Indian Reservation.

M.Y. did not disclose this abuse until the summer of 2005. In July of 2005, following a fight with her grandmother, M.Y. attempted to commit suicide. She was treated for serious injuries at a hospital on the Pine Ridge Reservation and was eventually transferred to a psychiatric hospital in Rapid City, South Dakota. There, during counseling sessions, M.Y. informed a counselor that Reddest had sexually abused her.

Approximately one month later, the FBI began investigating Reddest. During the course of the investigation, Reddest gave two short statements to Special Agent Lauck. In both statements, Reddest apologized to M.Y. for his prior sexual conduct.

Prior to trial, Reddest moved to suppress these statements, but the district court denied Reddest's motion, and that decision is not disputed on appeal.

Following the FBI's investigation, Reddest was indicted on three counts of aggravated sexual abuse, in violation of 18 U.S.C. §§ 2241(a) and 1153, and three counts of sexual abuse of a minor, in violation of 18 U.S.C. §§ 2243(a) and 1153. Reddest pleaded not guilty, and a three-day jury trial was held. At the close of the Government's evidence, Reddest moved for judgment of acquittal on all counts. The district court reserved ruling on count III until after the jury returned its verdict, but the district court denied Reddest's motion on the remaining counts. Reddest then put on evidence and renewed his motion for acquittal at the close of all evidence. The district reserved ruling on count III and denied the motion as to all of the other counts. After deliberating, the jury returned guilty verdicts on counts I, II, IV, V, and VI, and acquitted Reddest on count III. Thereafter, the district court sentenced Reddest to 292 months of imprisonment and 10 years of supervised release. This appeal follows.

## II.

As a threshold matter, Reddest argues that his challenge to the sufficiency of the evidence supporting his conviction under count IV, for penetration of the genital opening, is meaningfully different from his argument that the district court erred by denying his motion for judgment of acquittal on all counts. Reddest contends that "the questions and applicable authorities are distinct," (Reddest's Reply Br. 14), but he does nothing to explain how this distinction has any meaningful impact on our review here.

For purposes of this appeal, we discern no meaningful distinction between the *de novo* standard used to review the sufficiency of the evidence to support a guilty verdict and the *de novo* standard used to review the district court's ruling on a defendant's motion for judgment of acquittal. In both inquiries, we review the same

evidence, view the evidence in the light most favorable to the Government, and ask the same legal question: whether the evidence is sufficient to permit a reasonable jury to conclude that the defendant is guilty beyond a reasonable doubt. Compare United States v. Hilliard, 490 F.3d 635, 640 (8th Cir. 2007) (judgment of acquittal), with United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007) (sufficiency of the evidence). Accordingly, we address both of Reddest's arguments using the same standard of review. See United States v. Johnson, 18 F.3d 641, 645 n.7 (8th Cir. 1994) (construing a challenge to the district court's denial of a motion for judgment of acquittal and a sufficiency-of-the-evidence challenge as indistinguishable for purposes of review); United States v. Roman, 728 F.2d 846, 860 n.9 (7th Cir.), cert. denied., 466 U.S. 977 (1984) (same).

## A. Counts I and II

Reddest argues that the evidence is insufficient to support his convictions under counts I and II of the indictment. Counts I and II arose out of the same assault. Count I charged Reddest with engaging in sexual intercourse by use of force and threats, § 2241(a), and count II charged Reddest with engaging in sexual intercourse with a victim between the ages of 12 and 16, who was at least 4 years younger than him, § 2243(a).

The evidence supporting counts I and II, construed in the light most favorable to the government, is sufficient to permit a reasonable jury to convict Reddest. The Government's evidence showed that Reddest first abused M.Y. in February of 2003. When she went to sleep in her grandparents' livingroom on the night of the assault, Leroy was lying on the livingroom floor in front of the TV. M.Y. was close by on the livingroom couch. She awoke when she felt something rubbing her leg, and she then saw Reddest get on top of her. M.Y. tried to scream, but Reddest covered her mouth with his hand and told her that if she told anyone about the incident he would beat her up. M.Y.'s basketball shorts were pulled down, and, despite her resistance, Reddest

penetrated her vagina with his penis for approximately five minutes. In addition to M.Y.'s testimony, the Government introduced the statement that Reddest made to Special Agent Lauck, in which Reddest wrote: "I'm sorry I laid on top of you at night at the trailer and did a little sex. [sic]. Leroy." (Trial Tr. at 381).

Circumstantial evidence also supports Reddest's convictions on counts I and II. M.Y.'s grandparents observed changes in her behavior around the time of the sexual assaults. M.Y. began doing small loads of laundry late at night and also started taking showers late at night, behavior that an expert witness testified is consistent with sexual abuse. Additionally, M.Y. attempted to install a lock on her door to protect herself, eventually installing a deadbolt lock with the help of her grandfather.

M.Y.'s testimony at trial, coupled with the corroborating evidence described above, is ample evidence both that Reddest used force to have sexual intercourse with M.Y. after threatening her with serious bodily injury, and that Reddest, at age 57, had sexual intercourse with M.Y. when she was 13 years old.

Reddest argues that M.Y.'s inconsistent testimony at trial and her prior inconsistent statements undermine the Government's case. But credibility determinations and the weighing of conflicting evidence are committed to the jury. Piwowar, 492 F.3d at 956. In fact, due to the jury's superior opportunity to evaluate the evidence presented, the jury's credibility determinations are "virtually unreviewable on appeal." United States v. Davis, 471 F.3d 938, 948 (8th Cir. 2006) (internal marks omitted). The conflicting evidence offered at trial affords no basis for reversal here.

Because the evidence is sufficient to support Reddest's convictions on counts I and II, we affirm those convictions.

B.  Counts V and VI

Counts V and VI of the indictment charge violations of the same statutes as counts I and II, but are based on an independent assault that took place on a different day.  As with counts I and II, we conclude that the evidence is sufficient to permit a reasonable jury to convict Reddest of counts V and VI.  M.Y. testified that just prior to the start of school in 2003, Reddest assaulted her in her bedroom.  After returning home late at night after walking with friends, she went to bed.  As she was falling asleep, Reddest entered her room, got on top of M.Y., grabbed her arms, and pulled back her hair.  M.Y. resisted by attempting to hit the wall, but Reddest put his hand over her mouth and penetrated her vagina with his penis for approximately five minutes. At the end of the assault, before Reddest left M.Y.'s room, he threatened to beat her up if she told anyone about the incident.

In addition to this testimony, the circumstantial evidence of M.Y.'s behavioral changes described above supports Reddest's convictions on counts V and VI of the indictment.  The evidence as a whole is sufficient to permit a reasonable jury to conclude, on count V, that Reddest used force to have sexual intercourse with M.Y. and then threatened her with serious bodily injury near the end of the assault.  The evidence is also sufficient to permit a reasonable jury to conclude, under count VI, that Reddest, at age 57, had sexual intercourse with M.Y. when she was 13 years old.  As discussed above, credibility determinations and the weighing of conflicting evidence are squarely committed to the jury, affording no basis for reversal here.  We affirm Reddest's convictions on counts V and VI.

C.  Count IV

Reddest argues that the evidence is insufficient to support Reddest's conviction for penetration of the genital opening under count IV of the indictment.  Count IV charged Reddest with engaging in a "sexual act" with a person at least four years

younger than him, who was over the age of 12 but under the age of 16, in violation of 18 U.S.C. § 2243(a). Consistent with one of four definitions of "sexual act" codified at 18 U.S.C. § 2246(2), the indictment describes Reddest's particular sexual act on this occasion as "penetration of the genital opening . . . by the finger . . . with the intent to abuse, humiliate, harass, degrade and arouse and gratify the sexual desire of any person." (Indictment at 2.)

The evidence at trial supporting count IV showed that on the night of this alleged sexual assault, Reddest was sleeping on M.Y.'s grandparents' livingroom floor, and M.Y. was sleeping nearby on the livingroom couch. M.Y.'s cousin was also sleeping in the room. M.Y. woke up to Reddest rubbing her leg. Reddest then reached inside her underwear to touch her, and he only stopped touching her when she called out her cousin's name.

Specifically, M.Y. testified that Reddest's finger went "[r]ight in my – almost close to my [hand gesture]." (Trial Tr. at 143.) The prosecutor then asked M.Y. what her circular hand gesture referred to, to which she replied, "[m]y hole." (Id. at 144.) M.Y. then affirmed that she considered her hole a part of her vagina, and affirmed that her hole was "where a woman puts the tampon in." (Id.) On cross-examination, M.Y. testified that Reddest's hand was inside her underwear. (Id. at 195.) But in response to the question: "He hadn't actually put any part of his hand in you, had he," she answered "[n]o," "[h]e touched my vagina." (Id.) And in response to the follow-up question: "He just touched the outside of your vagina," M.Y. answered yes. (Id.) As further evidence of the incident, the Government introduced Reddest's prior statement in which he wrote: "[M.Y.], I'm sorry what [sic] happened that night at the trailer. You had your legs on me that night and I pushed legs [sic] from me a couple of times and I accidentally touched your private part. I really sorry [sic] for that. Leroy." (Id. at 377).

Even when construed in the light most favorable to the verdict, this evidence is insufficient to prove penetration of the genital opening. This is so even if we were to give "genital opening" the construction urged by the Government–an interpretive question we need not reach here. See United States v. Jahagirdar, 466 F.3d 149, 154-55 (1st Cir. 2006) (holding that "penetration of the labia majora is sufficient" to prove penetration of the "genital opening" under § 2246(2)(C)).

The only evidence that is arguably sufficient to prove penetration of the genital opening, however slight, is M.Y.'s statement that Reddest's finger went "[r]ight in my – almost close to my [hole]." (Trial Tr. 143.) This description of the assault is ambiguous; it is not clear where Reddest's finger was or how "close" it was to the genital opening. Under the terms of the statutory provision charged by the Government, these facts matter–yet the Government did little to clarify them further. See United States v. Plenty Arrows, 946 F.2d 62, 65 (8th Cir. 1991) (recognizing the anatomical specificity of the definition of a "sexual act," reviewing the evidence, and concluding that the complaining witness's testimony "lack[ed] the necessary specificity" to sustain the conviction). It is also not clear whether the second half of M.Y.'s statement ("almost close to my [hole]") retracts, clarifies, or modifies the first half ("[r]ight in my").

We recognize that when read in isolation, M.Y.'s statement that Reddest's finger was "in" a vaguely identified location could imply at least slight penetration of M.Y.'s labium. But even when construed in the light most favorable to the verdict, this single, nondescript, internally inconsistent statement laden with ambiguity is insufficient to permit a reasonable jury to find Reddest guilty beyond a reasonable doubt on count IV. "[W]e cannot sustain a conviction based on mere suspicion or possibility of guilt." Id. (internal marks omitted). The remaining evidence of the incident clearly fails to prove penetration of the genital opening. M.Y. affirmed that Reddest "hadn't actually put any part of his hand in [her]," and said that Reddest "touched [her] vagina." (Trial Tr. at 195.) Immediately thereafter, she affirmed that

Reddest "just touched the outside of [her] vagina." (Id.) Not only does this testimony support Reddest's position, it also makes clear that M.Y. was not using the word "vagina" in its anatomically correct sense, and accordingly, M.Y.'s testimony that Reddest touched her vagina, or the outside of her vagina, is minimally helpful to the Government's position.

We note that at oral argument before this court the Government suggested that when M.Y. made her circular hand gesture to show approximately where Reddest touched her, she placed her finger on the edge of the "hole" she made with her other hand. If substantiated, this may strengthen the Government's position. But nothing more than M.Y.'s circular gesture is documented in the transcript. It is elementary that we will not consider "evidence" that is not included in the record of the proceedings below. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993) ("Generally, an appellate court cannot consider evidence that was not contained in the record below."). Accordingly, we are constrained from considering the Government's explanation of the particulars of M.Y.'s alleged demonstration.

In sum, we conclude that the Government did not meet its burden of proof as a matter of law; no reasonable jury could find Reddest guilty of penetration of the genital opening beyond a reasonable doubt based on the ambiguous and nonspecific evidence produced by the government. See Johnson, 18 F.3d at 645-46 (standard of review).

Attempting to salvage a conviction on count IV, the Government contends that Reddest's conviction should stand because even if the evidence did not establish penetration of the genital opening under § 2246(2)(C), the evidence did establish an alternative definition of "sexual act" codified at § 2246(2)(D): "[T]he intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years." Even though the indictment did not allege § 2246(2)(D)'s definition in count IV, and in fact specifically alleged digital

penetration as the crime committed, the Government argues that this "variance" between the proof at trial and the indictment did not prejudice Reddest.

The Government did not advance this argument before the district court when it was resisting Reddest's motions, and we believe that its conviction must rise or fall on the charge it chose to bring and on the instructions submitted to the jury, neither of which was predicated on the alternative definition it now proposes.

We affirm Reddest's convictions under counts I, II, V, and VI. We reverse and vacate his conviction on count IV and remand for entry of an amended judgment.

_____