# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3481

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| Paul A. Miller, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: June 13, 2011
Filed: June 17, 2011

_____

Before RILEY, Chief Judge, BYE and MELLOY, Circuit Judges.

_____

PER CURIAM.


Paul Miller and a co-defendant were indicted on one count of conspiring to make false statements to a financial institution and to commit mail fraud in violation of 18 U.S.C. § 371, three counts of aiding and abetting loan- and credit-application fraud in violation of 18 U.S.C. §§ 2 and 1014, and three counts of aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341. After the government rested its case, Miller's counsel orally moved for a directed verdict of acquittal, arguing that no government witness clearly and affirmatively identified Miller as the Paul Miller

involved in the indictments. The district court[1] took the motion under advisement and submitted the case to the jury. The jury found Miller guilty on all seven counts.

Upon defense counsel's request, the district court allowed the parties to submit post-trial briefs regarding the identification issue. The district court ultimately denied Miller's motion for a directed verdict, finding the evidence sufficient to identify Miller as the Paul Miller who committed the acts charged. Miller's sole argument on appeal is that the district court erred in not granting his motion for a directed verdict of acquittal because the government failed to identify Miller as the Paul Miller involved in the conspiracy, application frauds, or mail frauds. We affirm.

We review a district court's denial of a motion for directed verdict of acquittal under a de novo standard of review. United States v. Espinosa, 585 F.3d 418, 423 (8th Cir. 2009). We view the evidence in the light most favorable to the government, resolving all evidentiary conflicts in the government's favor. Id. Because we accept all reasonable inferences supported by the evidence, "[a] jury verdict will not lightly be overturned and we will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id.

There is overwhelming evidence in this case that an individual using the name Paul Miller committed various acts of fraud, including the making of false statements to a financial institution in 2004 and 2005. It is also clear that the appellant in this case is Paul Miller. The argument, in essence, is that Paul Miller is a common name and that there is no evidence the Paul Miller indicted and convicted in this case is the same Paul Miller as the person who committed the criminal acts in 2004 and 2005.

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

Identity of the defendant as the person who committed the offense charged is essential to a conviction. Butler v. United States, 317 F.2d 249, 254 (8th Cir. 1963). However, "[c]ourtroom identification is not necessary when the evidence is sufficient to permit the inference that the defendant on trial is the person who [committed the acts charged]." United States v. Hyles, 521 F.3d 946, 955 (8th Cir. 2008) (second alteration in original) (internal quotation marks omitted).

We agree with the district court that the jury reasonably could have concluded from all witness testimony that Miller was the Paul Miller who committed the acts charged. While no witness specifically pointed at Miller for identification purposes, the testimony of at least three witnesses overlapped and, cumulatively, identified Miller as the Paul Miller who committed the acts charged.

First, Miller's co-defendant, Jacques Weston, testified about his relationship and business ventures with Miller. He discussed the creation of "Love Worth Seeking Ministries." Specifically, Weston testified that the "Love Worth Seeking Ministries" business venture included starting a church and preservation center next to a store in Houston, Texas. The next witness, Gibrill Mustapha, testified that he knew Miller since 1986. Mustapha also testified that Miller contacted him regarding vacant space next to his convenience store for a ministry business called "Love Worth Seeking Ministries." Furthermore, Mustapha testified about a telephone conversation he had in which Miller and Mustapha together called Weston about the use of Mustapha's name and social security number. After describing that telephone conversation, Mustapha testified, "Since then, when Paul got up, I have not seen him up until now." Lastly, Miller's accountant, Ricky Porter, testified that he prepared tax returns for "Love Worth Seeking Ministries" and that he knew Miller and his family for over ten years.

The record shows that these three witnesses testified in open court in the presence of Miller. In particular, Mustapha expressly connected the Paul Miller who

-3-

was the object of his testimony to Miller when Mustapha stated that he "had not seen him up until now." Therefore, a reasonable jury could have inferred that the witnesses' testimony concerned Miller, the Paul Miller who the witnesses had known for several years and were in court to discuss.[2] Hyles, 521 F.3d at 955.

Accordingly, we affirm the judgment of the district court.

———————————————————

[2]We acknowledge that one government witness, Matthew Thorpe, a loan officer for a victim bank, did not recognize Miller. Specifically, Thorpe testified that he met a person claiming to be Paul Miller one time, six years ago, and that Paul Miller was significantly younger than Miller. However, the jury had the right to evaluate each witness's testimony and determine what impact it had on their decision. The record as a whole supports the jury's verdict.