# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1139
_____

United States of America

*Plaintiff - Appellee*

v.

Donald Earl Dodson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: December 18, 2015
Filed: March 29, 2016

_____

Before MURPHY, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

After a jury trial, Donald Dodson was convicted of aiding and abetting embezzlement from an agency receiving federal funds, in violation of 18 U.S.C. §§ 666 and 2. At sentencing, Dodson objected to receiving a criminal history point

for a previous uncounseled conviction. The district court[1] overruled the objection, but varied downward from the 18 to 24 month advisory Guidelines range and sentenced Dodson to 6 months' imprisonment and 2 years of supervised release. Dodson appeals, renewing his objection to his criminal history calculation and challenging the sufficiency of the evidence. Having jurisdiction pursuant to 28 U.S.C. § 1291, and finding no error, we affirm.

## I. Background

In August 2012 the United States Department of Housing and Urban Development Office of Inspector General began an investigation into the Star City, Arkansas Housing Authority (SCHA) after being informed of allegations of misappropriation of funds by Libby Dodson, Donald Dodson's ex-wife. At the beginning of the investigation, Libby Dodson was the Executive Director of SCHA and had exclusive signatory authority as the person responsible for payroll management and oversight, including printing checks and creating invoices.

Libby Dodson admitted in an interview with investigators that she had been preparing fraudulent invoices and checks made payable to her mother, Elizabeth Roberts, and her brother-in-law, Jimmy Dodson, both of whom were occasionally employed at SCHA. Libby Dodson admitted that the checks made out to her mother were not in compensation for any work done. Libby Dodson deposited and cashed the checks made out to Roberts herself, using the money for personal use, such as to cover her monthly bills. Libby Dodson did so without Roberts's knowledge or permission. With regard to Jimmy Dodson, the checks were either for work that was not performed or for amounts in excess of what his work actually justified.

---

[1]The Honorable D. Price Marshall, United States District Judge for the Eastern District of Arkansas.

Donald Dodson never worked for SCHA. Libby Dodson admitted that she gave him checks nonetheless. To effect the scheme, Libby Dodson created fraudulent work invoices for him in the name of a company called J&D Construction. Donald Dodson's checks sometimes bore the name of Donna Ballinger, another SCHA employee, but Libby Dodson admitted to signing Ballinger's name without her knowledge or permission. Ultimately, Donald Dodson received $82,225.42 in checks from the SCHA, and kept at least $21,307.00, giving the rest to Libby Dodson.

Donald Dodson does not dispute he did not do any work for SCHA, yet the evidence indicated he had previously lied and said that he did. For instance, he told a bank teller who was suspicious of a check he cashed that he was putting in windows at SCHA. When interviewed, Donald Dodson told Detective Firmin—one of the investigators from the Department of Housing—he cashed the checks, but he did not know about the fraudulent invoices Libby Dodson had created. He also stated that, for 18 of the 19 checks he cashed, he did work for SCHA, and he described for Detective Firmin the type of work he had done. He also said he kept some of the money, but gave much of it to Libby Dodson and to his brother, Jimmy Dodson.

## II. Discussion

Dodson argues there was not enough evidence to support the jury's finding that he had knowledge of the theft of federal funds sufficient to make him an aider or abettor of Libby Dodson's scheme. As he did at trial, he asserts that Libby Dodson was the one who created the fraudulent invoices, forged the signatures, and masterminded the scheme. He points out that no witnesses at trial testified explicitly that he knew Libby Dodson had committed theft, and argues that the government simply failed to present sufficient evidence that he knew the checks he cashed represented stolen funds. "We review the sufficiency of the evidence de novo, viewing [the] evidence in the light most favorable" to the jury's verdict, "resolving

conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Brooks, 715 F.3d 1069, 1080–81 (8th Cir. 2013) (quoting United States v. Miller, 698 F.3d 699, 702 (8th Cir. 2012)). "[W]e will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (alteration in original) (quoting United States v. Espinosa, 585 F.3d 418, 423 (8th Cir. 2009)).

As the district court instructed the jury, in order to be found guilty of aiding abetting the charged theft, Donald Dodson had to "have known the theft concerning a program receiving Federal funds was being committed or going to be committed." See 8th Cir. Model Crim. Jury Instr. § 5.01 (2014). The government may have lacked direct evidence that Dodson knew of the theft, but the jury heard sufficient evidence to reach the conclusion, beyond a reasonable doubt, that he did. See United States v. Armstrong, 16 F.3d 289, 292 (8th Cir. 1994) ("Because knowledge in the mind of another is a subjective thing not always capable of proof by positive or direct evidence, circumstantial evidence may be relied upon in determining whether the requisite mental condition existed.") (internal quotations and alterations omitted). Dodson cashed checks for work he knew he did not do (and from an organization he had never worked for), lied to a bank teller who asked him what he did for the SCHA, lied to an investigator about doing the work—going into detail about the work he supposedly did—and kept a significant amount of the money. We conclude from these facts a reasonable jury could have found beyond a reasonable doubt Donald Dodson had knowledge of and was involved in Libby Dodson's theft of funds from the Housing Authority.

Donald Dodson also alleges that the district court erred in including the one criminal history point he was assessed for a prior conviction for Domestic Battery in the Third Degree—a misdemeanor for which he did not receive jail time. He argues that because he was both uncounseled and not advised of his right to counsel for the prior conviction, it should not count for purposes of calculating his criminal history score.

-4-

"The records show that [Dodson] was convicted of the misdemeanor offense[], and our cases make clear that once the government carries its initial burden of proving the fact of conviction, it is the defendant's burden to show his prior convictions were not constitutionally valid." United States v. Charles, 389 F.3d 797, 799 (8th Cir. 2004). Dodson attempts to show a constitutional error in his prior conviction by arguing that he was not advised of his right to counsel and therefore did not knowingly waive that right during the proceeding that led to his misdemeanor conviction. The record, however, is silent with regard to any evidence that would establish his factual claim. The unobjected-to information in Dodson's presentence report indicates that Dodson's "[a]ttorney representation [for the prior offense was] unknown. The circumstances for this case are not available." Dodson did not present any evidence, beyond the lack of records, that he was not advised of his right to counsel. He offered no transcript or additional documentation as to those proceedings, and he presented no additional evidence by way of testimony or otherwise to support his factual assertion.[2] See Charles, 389 F.3d at 799–800. Because Dodson failed to meet his burden of proving the factual basis upon which his legal argument relies, the district court did not err in calculating his criminal history score.

## III. Conclusion

We affirm the judgment of the district court.

_____

---

[2]The government also argues that any sentencing calculation error was harmless, because the district court would have imposed the same sentence regardless. See United States v. Woods, 670 F.3d 883, 886 (8th Cir. 2012) ("[C]omputation error is harmless if the government can show that the procedural error did not substantially influence the outcome of the sentencing proceeding." (quoting United States v. Walker, 555 F.3d 716, 722 (8th Cir. 2009))). Even if Donald's prior misdemeanor had not been counted, the district court's downward variance was well below the Guidelines range of 15–21 months, and the court noted that Donald's advisory range over-represented his minor criminal history. We need not speculate on what the district court would have done, however, as Donald has not proven sentencing error.